IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SHERRY WATKINS,<br><br>      Plaintiff,<br><br>v.<br><br>MISSOURI DEPARTMENT OF CORRECTIONS,<br><br>ALGOA CORRECTIONAL FACILITY<br><br>ANNE PRECYTHE, in her individual and official capacity,<br><br>KELLY MORRISS, in his individual and official capacity,<br><br>CORIZON, LLC,<br><br>UNKNOWN CORIZON EMPLOYEES, individually and in their official capacities,<br><br>UNKNOWN MISSOURI DEPARTMENT OF CORRECTIONS OFFICERS AND PERSONNEL, individually and in their official capacities,<br><br>NARDENRASINH KHENGAR, individually and in her official capacity, and<br><br>SUSAN HODGES, individually and in her official capacity<br><br>      Defendants. | Case No. 2:21-cv-04166-NKL |

1

**ORDER**

Before the Court are motions to dismiss Plaintiff Sherry Watkins' Amended Complaint by Defendants Algoa Correctional Facility, the Missouri Department of Corrections ("MDOC"), Anne Precythe, and Kelly Morriss (the "State Defendants"), Doc. 63, and by Defendants Narendrasinh Khengar and Susan Hodges. Doc. 66. Defendants argue that the Amended Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 8. For the reasons discussed below, the Court grants the State Defendants' motion and grants in part Khengar and Hodges' motion.

## I. Background

### A. Original Complaint

On August 27, 2021, Watkins filed her initial complaint against Algoa, MDOC, Precythe, Morriss, and Corizon. Doc. 1 (Complaint). She alleged that Paul Harrison, her husband, was an inmate at Algoa. Doc. 1, ¶ 9. While incarcerated, Harrison contracted COVID and died. Watkins claimed Defendants both failed to protect Harrison from contracting COVID and refused to provide him medical treatment after he contracted COVID. *Id.* at ¶¶ 13-31. The State Defendants and Corizon filed separate motions to dismiss. Docs. 5 & 20. They argued that since Watkins made her allegations against "Defendants" or "one or more Defendants" they were insufficient, and she otherwise failed to allege a claim of deliberate indifference. The Court rejected Defendants' first argument because:

> Allegations that "Defendants" or "[o]ne or more Defendants" committed the misconduct alleged in a complaint can provide every Defendant with fair notice of the claims against them and the grounds upon which they rest because the allegations indicate that each Defendant could be liable for any of the allegations in the complaint.

*Watkins v. Algoa Corr. Facility Mo. Dep't of Corr.*, No. 2:21-CV-04166-NKL, 2022 WL 452476, at *2 (W.D. Mo. Feb. 14, 2022) (citing *Ash v. Anderson Merchandisers, LLC*, 799 F.3d

2

957, 961-62 (8th Cir. 2015)). However, the Court found the collective allegations failed to state a plausible claim against Algoa, MDOC, or Corizon because Watkins alleged that each Defendant was being named in their individual capacity and these Defendants were not individuals. *Id.* Furthermore, the Court dismissed the claims against Morriss and Precythe because Watkins failed to allege that they knew, or should have known, that the policies they adopted posed a serious risk to any inmate's health. *Id.* Additionally, the Court found it was not plausible that Morriss—the warden of the prison—or Precythe—the director of the Department of Corrections—would have been personally involved in the decision to refuse Harrison medical care. *Id.*

### B. Watkins' Amended Complaint

Watkins filed an Amended Complaint. Doc. 44. She added Khengar—a doctor who treated Harrison; Hodges—a nurse who treated Harrison; Unknown MDOC Officers and Personnel ("UMDOCOP"); and Unknown Corizon Employees ("UCE") as defendants. Watkins realleged that Harrison contracted COVID while an inmate at Algoa and died. She additionally alleged the following to support her claims: Harrison first noticed symptoms on October 11, 2020;[1] he did not receive treatment until October 14, 2020; he was taken to the hospital on October 14, 2020; he had chronic obstructive pulmonary disease (COPD), dyslipidemia, and hypertension; he had to take a medley of medications and use an inhaler; and he was denied access to one or more medications for at least three days. Doc. 44, ¶¶ 18-26. Watkins also alleged that prior to October 14, 2020, COVID was a known health risk; the comorbidities

---

[1] Watkins cited exhibits but failed to attach those exhibits to the Amended Complaint. However, the absence of these exhibits does not prevent the Court from accepting all plausible factual allegations as true for the purpose of deciding the motions to dismiss. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (holding a court must accept that a plaintiff's factual allegations as true for the purposes of a motion to dismiss).

3

negatively impacting COVID were widely known; many organizations and entities implemented procedures to prevent the transmission of COVID; and there had been multiple COVID infections at Algoa. *Id.* ¶¶ 27-30.

Watkins then brought two claims against each Defendant. With the exceptions described below, the allegations she brought against each Defendant are identical. Watkins alleged in her first claim that each Defendant breached its duty to protect Harrison by (1) failing to form, implement, and enforce adequate procedures for the housing of inmates after the arrival of COVID; (2) failing to form, implement, and enforce adequate procedures to prevent the communication of COVID, such as making and hygiene; (3) failing to provide adequate medical screening for COVID; (4) failing to form, implement, and enforce adequate procedures to limit employee contact outside of Algoa;[2] (5) failing to adequately segregate inmates infected with COVID and those uninfected; (6) denying Harrison one or more medications for at least three days; (7) failing to identify Harrison's serious medical needs; (8) failing to train, educate, obtain, or provide training on the severity of COVID; (9) failing to educate, obtain, or provide training information on the mitigation and treatment of COVID; (10) failing to adequately staff Algoa; (11) failing to train and educate inmates on the severity of COVID; (12) failing to provide adequate medical treatment for inmates with COVID; (13) failing to implement contract tracing for inmates and employees; (14) failing to provide adequate quarantine procedures for inmates and employees infected with COVID; and (15) failing to form and implement policies designed to relieve the burdens placed on employees with COVID.[3] *E.g.*, Doc. 44 ¶¶ 31-34.

---

[2] This allegation was not made against UMDOCOP. Doc. 44, ¶ 117.

[3] Watkins also alleged that Precythe, Morriss, UCE, and Khengar failed to form, implement, and enforce polices to notify inmates' families of COVID exposures. *Id.* ¶¶ 78, 89, 144.

4

Watkins also alleges that UMDOCOP, UCE, Khengar, and Hodges failed to (1) provide medical treatment to Harrison for three days after symptoms began; (2) take Harrison to the hospital for hours after initial treatment; (3) perform necessary diagnostic treatment, including temperature, pulse, and oxygen saturation; (4) timely or adequately notify Harrison's family; or (5) communicate Harrison's medical needs to the correct parties. *Id.* ¶¶ 117-18, 151-52, 171-72, 190-91.

Watkins also alleged that each Defendant implemented, adopted, ratified, condoned, or acquiesced in the following policies, customs, or practices: (1) staffing with inadequate medical personnel to provide proper and necessary medical treatment to inmates, including Harrison; (2) inadequately training personnel to recognize and respond to serious medical conditions of inmates; (3) preventing inmates' efforts to submit requests for medical treatment; (4) concealing the extent and seriousness of Harrison and other inmates' serious medical conditions which had the effect of preventing or deterring others from attempting to secure the treatment of those conditions by other means; (5) refusing to refer inmates to specialists, hospitals, or clinics for diagnosis and treatment of medical problems. *E.g.*, *id.* ¶ 34.

Watkins additionally alleged that Precythe, Morriss, Khengar, and Hodges were aware of the severity, communicability, and comorbidity risks of COVID; the best methods to combat the spread of COVID; effective measures after COVID exposure; medical treatments to limit symptoms and communication of COVID; multiple COVID exposures at Algoa; and multiple COVID exposures at other facilities controlled by MDOC. *Id.* ¶¶ 76, 98, 160, 179.

In the second claim against each Defendant, Watkins alleged that each Defendant failed to provide adequate medical treatment to Harrison. She repeats the same allegations that were in her first claim. Lastly, Watkins alleges that Harrison contracted COVID and died as a direct

5

result of each Defendant's failure to protect, failure to provide adequate medical care, deliberate indifference, and policies.

### C. Defendants' Responsive Pleadings

Corizon filed an answer rather than moving to dismiss the Amended Complaint. Doc. 48. The State Defendants filed a motion to dismiss. Doc. 62. They argued that the claims against MDOC and Algoa must be dismissed because those entities are not "persons" subject to suit under 42 U.S.C. § 1983; Precythe and Morriss cannot be sued in their official capacity; Watkins failed to allege individual participation by Precythe and Morriss; and Watkins claims against the UMDOCOP must be dismissed because she failed to identify a party. Doc. 63 (Suggestions in Support of State Defendants' Motion to Dismiss). Khengar and Hodges also filed a motion to dismiss. Doc. 66. They argued that they cannot be sued in their official capacity; cannot be liable in a supervisory capacity; the Amended Complaint violates Rule 8 because it is excessively long, repetitive, ambiguous, vague, and conclusory; and Watkins' allegations do not state a plausible claim because they are vague and conclusory. Doc. 67 (Suggestions in Support of Khengar and Hodges' Motion to Dismiss).

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). To survive a motion to dismiss, a complaint therefore does not need detailed factual allegations but must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible if its "factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quotation omitted).

When deciding a motion to dismiss, the Court accepts the factual allegations contained in the complaint as true and liberally construes the allegations in favor of the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021).

### III. Discussion

#### A. Whether the Claims Against MDOC and Algoa Must be Dismissed With Prejudice

The State Defendants argue that the claims against MDOC and Algoa must be dismissed because they are not "persons" who are subject to suit under 42 U.S.C. § 1983. Watkins appears to agree and requests that the Court dismiss the claims against these Defendants without prejudice. The Court will dismiss these claims *with* prejudice.

42 U.S.C. § 1983 states a "person" is subject to civil liability if, while acting under the cover of state law, they deprive another of their constitutional rights. States and the "arms of the state" are not considered "persons" under § 1983 and thus are not amenable to suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70 (1989). Consequently, MDOC and Algoa cannot be held liable under 42 U.S.C. § 1983. *Brown v. Mo. Dep't of Corr.*, 353 F.3d 1038, 1041 (8th Cir. 2004) ("[W]e agree with the district court that MDOC was not a proper party under section 1983." (citing *Will*, 491 U.S. at 71)); *see also* Doc. 44 ¶ 8 (alleging that MDOC operates Algoa).

7

Thus, any attempt to amend the 42 U.S.C. § 1983 claims against these Defendants would be frivolous, and the Court will dismiss these claims with prejudice. *See U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (holding that futility is a valid reason to dismiss with prejudice).

### B. Whether Watkins Can State a Claim Against the Individual Defendants in Their Official Capacities

Watkins brings claims against Precythe, Morriss, UMDOCOP, Khengar, and Hodges in both their individual and official capacities. Precythe is the Director of MDOC, Morriss is Algoa's warden, Khengar is a doctor employed by Corizon and Hodges is a nurse employed by Corizon. Doc. 44, ¶¶ 7-12. The official capacity claims against Morriss, Precythe, and UMDOCOP must be dismissed with prejudice because state employees may not be sued in their official capacity. *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." (citation omitted)). Such a suit is precluded by the Eleventh Amendment. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) ("The Supreme Court has interpreted the Eleventh Amendment to bar actions in federal court against a state by its citizens . . . Additionally, the Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464 (1945)).

Furthermore, Watkins has provided no authority that employees of private medical providers in state prison, like Khengar and Hodges, can be sued in an official capacity. At best such claims are really claims against Corizon and would consequently be impermissibly

duplicative. *Riddick v. Watson*, 503 F. Supp. 3d 399, 415 (E.D. Va. 2020) (holding most courts have determined that official capacity claims against health care workers in jail are actually claims against their employer (collecting sources)); Fed. R. Civ. Proc. 12(f) (stating a Court may strike any redundant matter from a pleading). As repleading cannot save such claims, they will be dismissed with prejudice.

### C. Whether the Amended Complaint Complies With Federal Rule of Civil Procedure 8

Khengar and Hodges argue that the Amended Complaint should be dismissed because it violates Federal Rule of Civil Procedure 8. As stated above, FRCP 8(a)(2) requires only "a short and plain statement of the claim . . . to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. Additionally, under FRCP 8(e)(2) the Amended Complaint must be simple, direct, and precise. Khengar and Hodges argue that the Amended Complaint is impermissibly lengthy and that they cannot tell what claims are being alleged against them since most of the allegations are repeated against every Defendant.[4]

The Court has already rejected the argument that collectively plead allegations against "Defendants" or "one or more Defendants" are insufficient because these allegations provide every Defendant with fair notice that they could be liable for any of the alleged misconduct, if it is plausible that they committed said misconduct. *Watkins*, 2022 WL 452476, at *2 (citing *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961-62 (8th Cir. 2015)). This statement is no less true now that Watkins has explicitly made every allegation against every Defendant. Furthermore, Defendants' citation to *Carroll v. Liewer*, No. 8:21-CV-266, 2021 WL 4132404

---

[4] In their reply brief, Khengar and Hodges merge this argument with their argument that Watkins has failed to state a claim for relief. That argument is analyzed by the Court below. *See supra* Section III.D.

9

(D. Neb. Sept. 10, 2021), fails to persuade the Court. In *Carroll*, the plaintiff did not specify the action taken by each defendant. Watkins has alleged that each Defendant took part in the same misconduct.

Additionally, the Amended Complaint is sufficiently concise. Most of the Amended Complaint's length derives from the fact that Watkins repeats the same allegations against each Defendant. Doc. 44, at 6-76. While the Court did not order Watkins to separate her claims, it will not fault Watkins for responding to the arguments in Defendants' earlier motion to dismiss that its group pleading against "Defendants" was insufficient by explicitly alleging that each Defendant partook in the same misconduct.

The cases that Khengar and Hodges cite,[5] are distinguishable. In those cases, the complaints violated FRCP 8 because a lack of organization, or incomprehensible allegations, made it difficult to determine what the plaintiff's claims were. *See Richards v. Dayton*, No. CIV. 13-3029 JRT/JSM, 2015 WL 1522199, at *12 (D. Minn. Jan. 30, 2015) ("The factual narrative is muddled, repetitive, and continually interrupted by [irrelevant information] . . . The lack of organization and sheer volume of extraneous information made it very difficult to determine what claims Richards is attempting to raise."); *Murphy v. Aurora Loan Servs., LLC*, No. CIV. 11-2750 ADM/JJK, 2013 WL 2403602, at *3 (D. Minn. May 31, 2013) ("[T]he proposed pleading is still readily deficient, or, to put it more pointedly, it is a mess."); *U.S. ex rel. Ellis v. City of Minneapolis*, No. 11-CV-0416 PJS/TNL, 2012 WL 6652885, at *1 (D. Minn. Dec. 21, 2012) ("Nor is the complaint 'plain.' To the contrary, the complaint is largely incomprehensible."). However, Watkins Amended Complaint is logically organized and comprehensible. She lists the Parties, states the allegations that are common to all counts and

---

[5] Defendants also cite to a "*Norman*, 2019 WL. At *2." Since this is the only citation information provided, the Court cannot determine what case Defendants are citing.

then details the allegations against each specific Defendant. While more information could have been provided, that lack of detail does not make these allegations incomprehensible.

### D. Whether Watkins has Stated a Claim for Deliberate Indifference Against the Individual Defendants

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted)). To state a claim for deliberate indifference Watkins must allege that her husband suffered from an objectively serious medical need that Defendants knew of but deliberately disregarded. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). If the risk of harm to Harrison was obvious, then a fact finder can infer that a Defendant knew their actions posed a serious risk to Harrison's health. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

Precythe, Morriss, Khengar, and Hodges argue that they cannot be liable in their capacity as supervisors. An individual cannot be liable under 42 U.S.C. § 1983 on a theory of respondent superior. *Iqbal*, 556 U.S. at 676. However, a supervisor can be liable if they "were personally involved in the constitutional violation, tactility approved of their subordinate's known unconstitutional conduct, or approved a policy or directive that led to a constitutional deprivation." *Watkins*, 2022 WL 452476, at *2 (citing *Brown*, 353 F.3d at 1040). Watkins has alleged that each Defendant either formed policies or personally took actions that caused her husband to contract COVID. Thus, if Watkins has properly alleged the elements of a deliberate indifference claim, then she has properly alleged that Defendants personally deprived Harrison of his constitutional rights.

11

However, Watkins has failed to state a claim against the individual state defendants—Morriss, Precythe, and the UMDOCOP—because she has failed to allege that these Defendants knew their actions posed a serious risk to Harrison's health and consciously disregarded that risk. *See, e.g.*, *Farmer*, 511 U.S. at 837-38 (holding a Defendant must both know of and consciously disregard a substantial risk to a prisoner's health to be liable for deliberate indifference).

The Amended Complaint contains some factual allegations regarding Morriss and Precythe's knowledge, but these allegations are insufficient to show that the State Defendants consciously disregarded a substantial risk to Harrison's health. First, Watkins alleged that Morriss and Precythe know about the severity and communicability of COVID, Doc. 44, ¶¶ 65, 87, but knowing that COVID poses an objectively serious health risk does not establish that these Defendants recklessly disregarded that risk. *Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019) (holding that to meet the subjective element of a deliberate indifference claim, a plaintiff must show defendant knew of an objectively serious medical risk and then consciously disregarded that risk).

Second, Watkins alleged that these Defendants were aware of the "the best methods to combat the spread of COVID." Doc. 44, ¶¶ 65, 87. It is reasonable to infer that Defendants did not adopt said best practices since most of the policies Defendants implemented were allegedly "inadequate." *E.g.*, *id.* ¶ 89. However, the State Defendants did not have to adopt the "best methods"; they were only required to not enact policies that they knew posed a serious risk to Harrison's health. *See McCollum v. Titus*, No. 21-CV-1774 (NEB/HB), 2022 WL 2496249, at *6 (D. Minn. June 2, 2022) ("The Eighth Amendment does not require prison officials take every measure necessary to eliminate the risk of [COVID]" (citation omitted)) *report and recommendation adopted*, No. 21-CV-1774 (NEB/JFD), 2022 WL 2467786 (D. Minn. July 6,

2022); *Angelica C. v. Immigr. & Customs Enf't*, No. 20-CV-913 (NEB/ECW), 2020 WL 3441461, at *16 (D. Minn. June 5, 2020) ("The Court recognizes that Respondents' measures may indeed prove inadequate to prevent COVID-19 from entering or spreading within KCJ and SCJ, and that in fact there may not be a perfect solution to prevent COVID-19 from doing so. But the Constitution does not mandate a perfect solution to avoid a deliberate indifference claim.") *report and recommendation adopted*, No. 20-CV-913 (NEB/ECW), 2020 WL 3429945 (D. Minn. June 23, 2020).

Lastly, Watkins alleges these Defendants knew there had been previous outbreaks at Algoa and other MDOC facilities, but the fact that a risk materialized does not establish that Defendants knew their precautions against the risk were insufficient.[6] *See Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *Aultman v. Shoop*, No. 2:20-CV-3304, 2021 WL 3634730, at **4-5 (S.D. Ohio Aug. 17, 2021) ("[T]he fact that COVID-19 has spread among [ ] inmates does not establish . . . the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19." (citation omitted)).

On the other hand, the Court finds that Watkins has stated a claim for deliberate indifference against Khengar and Hodges. Watkins has alleged that Khengar and Hodges were subjectively aware of the serious medical risks posed by COVID, especially to someone with Harrison's comorbidities, and that these Defendants knew specific treatments and medications

---

[6] The State Defendants argued that the clams against the UMDOCOP must be dismissed because Watkins has not identified the Parties she is suing. However, the Court does not need to address the argument because the allegations against these Defendants are even more deficient than the allegations against Morriss and Precythe since Watkins did not allege that these individuals had any knowledge about the impact of their actions. *See* Doc. 44, ¶¶ 107-123.

that could address the serious medical risks of COVID. Doc. 44, ¶¶ 160, 179. But Defendants chose to deny Harrison one or more of his medications for three days; failed to provide Harrison with medical treatment for at least three days after his symptoms began; failed to take Harrison to the hospital for hours after initial treatment; failed to perform necessary diagnostic treatment; and concealed the extent and seriousness of Harrison's serious medical condition. Doc. 44, ¶ 181. Further, Watkins alleged that as a result of these actions by Khengar and Hodges, Harrison died. Consequently, Watkins has stated a plausible claim that Defendants Khengar and Hodges consciously disregarded Harrison's objectively serious medical needs which caused his death. *See Frazier v. Graves,* No. 4:20-CV-00434-KGB, 2021 WL 4502150, at *10 (E.D. Ark. Sept. 30, 2021) (stating plaintiff had stated a claim for deliberate indifference against defendants who denied care to inmates who contracted COVID); *Bailey v. McKinney,* No. 4:11CV382 CDP, 2012 WL 4092451, at *3 (E.D. Mo. Sept. 17, 2012) (holding Plaintiff had stated a claim of deliberate indifference when he alleged that defendant knew he had arthritis and gum pain but refused to give him over-the-counter pain medications); *cf. Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990) ("[G]rossly incompetent or inadequate care can constitute deliberate indifference . . . a refusal to provide essential care violates the eight amendment." (citation omitted)).[7]

## IV. Whether Leave to Amend Should Be Granted

In Watkins' response brief, she asked for the Court to grant her leave to further amend the Amended Complaint, if the Amended Complaint is found deficient. Leave to amend should be given freely when justice requires. Fed. R. Civ. Proc. 15(a)(2). However, leave to amend

---

[7] These allegations do not state a claim against Precythe and Morriss because it is not plausible that individuals in Morris and Precythe's positions would be personally involved with, or tacitly approve of, the decisions to provide Harrison with deliberately indifferent medical care. *Watkins*, 2022 WL 452476, at *3.

14

Case 2:21-cv-04166-NKL   Document 74   Filed 08/01/22   Page 14 of 15

should be denied when it is sought in bad faith, would cause undue delay or prejudice to the opposing party because amendment would be futile, or the moving party has repeatedly failed to fix the deficiencies in their complaint. *See Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 844 (8th Cir. 2003) (citation omitted). There is no evidence that Watkins has acted in bad faith or that any amendment will cause undue prejudice to Defendants. As stated above, the claims against MDOC and Algoa, and the official capacity claims, cannot be fixed and thus are dismissed with prejudice. *See supra* Sections III.A, III.B. Furthermore, Watkins has already been granted leave to amend once, and has been granted oral argument on the pending motions. Yet Watkins has failed to identify any further facts that could be alleged to fix the individual capacity claims. Therefore, leave to file another Amended Complaint is denied. The Court however, will dismiss the individual capacity claims without prejudice rather than with prejudice.

V. **Conclusion**

For the reasons stated above, the State Defendants' motion to dismiss, Doc. 62, is granted, and Khengar and Hodges motion to dismiss, Doc. 66, is granted in part. The claims against the MDOC and Algoa are dismissed with prejudice. The official capacity claims against Khengar, Hodges, Morriss, Precythe, and UMDOCOP are dismissed with prejudice. The individual capacity claims against Morriss, Precythe, and UMDOCOP are dismissed without prejudice.

**IT IS SO ORDERED**.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 1, 2022
Jefferson City, Missouri